Marivel G. v Marcus D. (2005 NY Slip Op 50230(U))

[*1]

Marivel G. v Marcus D.

2005 NY Slip Op 50230(U)

Decided on February 18, 2005

Family Court, Queens County

Modica, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 18, 2005

Family Court, Queens County
MARIVEL G., Petitioner,
against
MARCUS D., Respondent.
F-11128-03/03A

Salvatore J. Modica, J.
Petitioner-mother filed a petition in Queens Family Court to enforce a 1988 child support order entered by a judge of the Family Court, Kings County. In response, the respondent-father moved to vacate both the child support order as well as the order of filiation, entered by that same court in 1988. [FN1] The respondent's motion was denied on the record, in open court, on February 7, 2005. The following constitutes the decision of this Court.
On January 18, 1988, the petitioner, Marivel C. [hereinafter Ms. G.], gave birth, out of wedlock, to Christina D. On February 29, 1988, the respondent, Marcus D., filed a paternity petition, seeking to be declared the father of Christina and to secure an order of visitation. In the petition, Mr. D. swore under oath that he and Ms. G. engaged in sexual intercourse from October 1985 to February 14, 1988. Included in the petition is a sworn statement by Mr. D. that he "acknowledged...paternity of the child...in writing...and...by furnishing support." An order of filiation was signed on April 11, 1988, upon Ms. G.'s admission that Mr. D. was, in fact, Christina's father. On June 2, 1988, Mr. D. appeared in court with an attorney apparently retained by him and obtained a temporary order of visitation. Thereafter, on July 26, 1988, the mother and father [*2]consented to final orders of visitation and child support. There is no indication in the court file whether Mr. D. was represented by an attorney on February 29th, April 11th, or July 26th. Neither side, however, has supplied the court with stenographic minutes concerning any of the above mentioned dates. [FN2]
On August 5, 2003, Ms. G. filed a petition to enforce the 1988 Kings County child support order. Mr. D. appeared and was assigned an attorney by a Support Magistrate, who calculated the child support arrears at $39,500. A petition to modify the support order downward and to adjust arrears was subsequently filed by the respondent. On January 20, 2004, the support order of $50 per week was continued on consent, the father was directed to pay $25 per week toward arrears, and the case was adjourned for either settlement or a willfulness hearing. After several adjournments, Mr. D. filed an order to show cause on July 12, 2004, seeking to have the underlying order of filiation vacated and his arrears discharged. On August 10, 2004, the Support Magistrate adjourned the case to September 23, 2004 for this Court's decision on the respondent's motion to vacate the 1988 judgments.
A hearing was subsequently ordered by this Court in December 2004 given its initial determination that it could not resolve the instant motion made by the respondent without first making certain factual determinations. Both sides were directed to be ready to proceed with the hearing on January 14, 2005. On January 14th, counsel for the respondent informed the Court that he could not appear due to a family emergency. With the petitioner's consent, the case was adjourned to February 7, 2005. On that date, the petitioner, her attorney, and her witnesses, as well as the respondent's attorney, all appeared in court. The respondent, however, was not present. According to his attorney, Mr. D. decided not to come to court because his stomach was upset. Mr. D.'s attorney further represented that his client was going to seek treatment from either a doctor or a hospital; no additional information, however, was given as to where or to whom Mr. D. allegedly went for treatment. When the Court offered to adjourn the case to the afternoon for Mr. D. to appear, counsel was unable to contact him. At this time, [*3]the Court denied the respondent's motion to vacate the 1988 orders of filiation and support and referred the matter back to the Support Magistrate to set a date for the wilfulness hearing. The Court would note that as of the date of the filing of this opinion, Mr. D. has not tendered verification in any form to this Court as to his illness and inability to appear in court on February 7th.
In denying Mr. D.'s motion without a hearing, the Court found that the respondent's failure to appear was dilatory, designed to secure another adjournment and to avoid proceeding to the wilfulness hearing for failure to pay over $39,000 in child support. This was quite apparent not only from the respondent's absence in Court on the hearing date, but also from the total lack of information he supplied to his attorney to explain why he was not present in court. Specifically, the respondent failed to provide any details whatsoever to his attorney so that this Court could attempt to verify whether he was truly incapacitated on the day in question and, thus, physically unable to come to court and participate in the hearing. Nor did the respondent remain in contact with either his attorney or the clerk of the court so that this Court could, after verifying his inability to appear in court, make an informed decision as to when to adjourn the case. It should be noted that the Court's suggestion to adjourn the case into the afternoon was rejected because the attempt by the respondent's attorney to contact him was completely unsuccessful. Under these circumstances, the respondent's alleged inability to come to court on February 7th, lacked the indicia of reliability.
"The granting of an adjournment for any purpose is a matter resting within the sound discretion of the trial court." Matter of Anthony M., 63 NY2d 270, 283 (1984); see also Matter of Hynes George, 76 NY2d 500 (1990). It should certainly not be granted where the record reveals that one side has resorted to gamesmanship. Nor should an adjournment be granted where prejudice would result to the opposing side. In this case, both sides were directed to be ready to commence the hearing on January 14th. Although the petitioner and her attorney were ready to proceed on that date, the respondent's attorney was not. This Court granted the request for an adjournment and re-scheduled the hearing for February 7th. Ms. G. and her attorney were again not only ready to proceed with the hearing on February 7th, but they also had witnesses present in the courthouse available to testify on the petitioner's behalf. In the context of this case, granting another adjournment to the respondent would have been both unfair and prejudicial to the petitioner. The Court, therefore, finds that the respondent was not entitled to an additional adjournment. Given that the petitioner has the burden of proof at the hearing, the Court finds that he has failed to sustain his burden and the motion to vacate the two 1988 orders is, accordingly, denied.
In any event, in light of the statements made on the record by the respondent's [*4]attorney on February 7, 2005, it is clear that there was absolutely no need for a hearing. When presented with the motion to vacate the 1988 judgments, the Court assumed that the respondent was denying that he is the father of Christina. As revealed in oral argument on February 7th, however, that assumption was completely incorrect. On that date, the respondent's attorney unequivocally stated that Mr. D. was not denying that he is the biological father of Christina. In fact, according to the respondent's attorney, Mr. D. has always maintained that he is Christina's father. Thus, when the petitioner's attorney represented on the record on February 7th that her client would consent to blood and DNA testing, the respondent's attorney rejected that offer for the simple reason that his client was not disputing paternity. A review of Mr. D.'s affidavit absolutely confirms the representations made by his attorney on the record on February 7th. When Mr. D. speaks of Christina in his affidavit, he refers to her as his daughter. Accordingly, since there is no dispute that Mr. D. is the biological father of Christina, then the order of paternity was correctly entered and should not be disturbed. See eg Matter of Mary C. v. Charles E., 188 AD2d 718 (3d Dept. 1992); compare eg Matter of McLeod v. Emanuel, 268 AD2d 434 (2d Dept. 2000). And this is so even accepting as true Mr. D.'s allegation that he was not represented by an attorney when the order of filiation was entered.
It should also be noted that when this Court granted a hearing in this case in December 2004, it did so in light of Matter of Leanna M. v. Douglas J., 35 AD2d 551 (2d Dept. 1970). In that case, Douglas J., a sixteen year old, accompanied by his mother, appeared before a judge, waived his right to an attorney and, apparently, to a blood test, and admitted paternity. Four years later, Douglas J. moved to vacate the filiation order, reopen the paternity adjudication, and obtain a blood test. A judge of the Family Court denied that motion and the Appellate Division, Second Department reversed. In the words of the Court:

[I]n view of the lack of a finding by the trial court on June 9, 1964 that appellant and his mother fully comprehended the legal import of waiver of counsel and of the blood test, when appellant, a 16-year-old youth admitted paternity, considerations of due process may have been impinged (citations omitted). Absence of counsel makes vulnerable an infant's admissions against interest in the Family Court; and in the interests of justice the oversight should be remedied (citations omitted.) Matter of Leanna M. v. Douglas J., supra 35 AD2d at 551-52.
In the view of this Court,Matter of Leanna M. is totally distinguishable from the case at bar. First, the respondent in that case moved to vacate the order of [*5]paternity 4 years later; in the case before this Court, Mr. D. waited 16 years before moving to vacate the judgments. Second, implicit in the Leanna M. decision was the Second Department's recognition that paternity was clearly in dispute, and the remedy granted was the ordering of a blood test to determine paternity. In this case, paternity is not and has never been in issue. Accordingly, even assuming that the respondent's right to an attorney was "impinged," Mr. D.'s remedy would be a blood test, which, as noted, he has rejected as unnecessary since he is the father of Christina.
Third, in Leanna M., it was the mother, not the alleged father, who filed the paternity petition. In this case, by contrast, it was Mr. D., not Ms. G., who initiated the paternity proceeding. That distinction is significant in that it is apparent that the respondent in Leanna M. appeared in court, not because he sought to be declared the father of the petitioner's child, but because the petitioner-mother wanted him to be so declared, thus leaving open the possibility that his presence in court was less than voluntary. In the case before this Court, there is absolutely no question that Mr. D. acted voluntarily and knowingly when he appeared in Kings County Family Court in 1988. Specifically, given the 3 year sexual relationship between Ms. G. and the respondent, it was clear to Mr. D. in 1988 that he was the biological father of Christina. That factor and his obvious desire to establish a relationship with his daughter prompted him to appear voluntarily in Kings Family Court in order to petition the court to first issue an order declaring him the father of Christina and then for an order permitting him to have visitation with the child. Ms. G. subsequently appeared in Court and agreed with Mr. D. that he was, in fact, Christina's father; an order of paternity and a final order of visitation were then entered on consent of both mother and father. In exchange, Ms. G. received an order of support. Having received the benefits of this agreement, Mr. D. now claims that his consent was improperly obtained because he was not represented by an attorney and was not advised of his rights. For these reasons, Mr. D. argues that he should now be relieved from paying all past and future child support. This Court finds this claim to be entirely without merit. As noted, Mr. D.'s consent was in, all respects, voluntarily obtained. Accordingly, the Leanna M. decision is inapplicable to the facts of this case.
Moreover, even assuming that the right to counsel applies to the 1988 proceedings, Mr. D. is barred by the doctrine of laches from moving to vacate the judgments. [FN3] Simply put, Mr. D.'s inexcusable delay in coming forward [*6]within a reasonable time and moving to vacate the judgments bars him from doing so at this time. See Fleming v. Giuliani, NY3d (December 21, 2004); Matter of Vickery, v. Village of Saugerties, 64 NY2d 1161 (1985); Amsterdam Savings Bank v. City View Management Corp, 45 NY2d 854 (1978); People ex rel Steinson v. New York City Board of Education, 158 NY 125 (1899). It should be noted that Mr. D. fails to offer a reasonable excuse for not moving to vacate the two judgments earlier. Id; see also CPLR 5015. This Court specifically finds that the excuses provided in Mr. D.'s affidavits do not reasonably explain or justify the delay in moving to vacate the 1988 judgments. More important, if the Court were to vacate the 1988 orders, the prejudice to Ms. G., who has had to bear the burden of Christina's support for the last 16 years, would be absolutely manifest.
In Manard v. Kinnett, 29 Misc 2d 1002 (Sup. Ct. Monroe Co. 1961), the Court held that an infant defendant "should have a reasonable time after reaching majority in which to institute proceedings to vacate and set aside a default judgment." In Manard, the time period that lapsed between the infant reaching majority and the petition to vacate the prior order was less than one year. Thus, even under a more expansive reading of "reasonable," Mr. D. has engaged in an unexcusable delay, and any remedy he may have had is no longer available to him. In addition to the passage of time and the absence of a legitimate excuse reasonably explaining Mr. D.'s failure to come forward earlier, it is abundantly clear that he is, in fact, the father of Christina. Given all these factors, Mr. D. is estopped from attempting to vacate the 1988 judgments entered against him. See eg Matter of Onondaga County Department of Social Services v. Gregory L.H., 255 AD2d 955 (4th Dept. 1998).
Finally, it is rather obvious to this Court that Mr. D.'s motion to vacate the 1988 judgments is, in no way, directed at undoing the order of paternity. As has been repeatedly noted in this opinion, Mr. D. does not deny that he is Christina's father. Mr. D. is, instead, motivated by a desire to avoid paying over $39,000 in child support as well as incarceration, which may result if a judge of this Court finds that he has wilfully failed to obey a lawful order of child support. This Court, however, is not empowered to facilitate [*7]Mr. D. in his attempt to avoid his child support responsibilities. Pursuant to Family Court Act § 451 and the Court of Appeals' decision in Matter of Dox v. Tynon, 90 NY2d 166 (1997), interpreting this statute, this Court has no authority to modify or annul the arrears that have accrued from the 1988 support order. Specifically, Family Court Act § 451 states that a "court may modify, set aside or vacate any order issued in the course of [a child support] proceeding, provided, however, that the modification, set aside or vacatur shall not reduce or annul child support arrears accrued prior to the making of an application pursuant to this section." As noted in Dox, based on the legislative amendments of 1980 and 1981, where a parent defaulted on child support, a Court may relieve such parent from a support judgment "only if the defaulting [parent] could establish good cause for having failed to request downward modification of support obligation prior to the accumulation of arrears." Id at 168. The Legislature, however, was not so generous to defaulting parents such as Mr. D. when it enacted the New York State Support Enforcement Acts of 1986 and 1987. In interpreting these two acts, the Court of Appeals noted:

The purpose of the recent revisions was to "preclude[ ] 'forgiveness' of child support arrears to ensure that respondents are not financially rewarded for failure either to pay the order or seek its modification." (citations omitted). Under the present enforcement scheme, then, "[n]o excuses at all are tolerated with respect to child support." (citations omitted). Child support arrears must be awarded in full, regardless of whether the defaulter has good cause for having failed to seek modification prior to their accumulation (citations omitted). "If a party obligated to pay child support wishes to avoid making payment, such as where his or her financial circumstances have deteriorated, that party must make an affirmative request for relief." (citations omitted).
Id at 173-74.
Given the decision in Dox, this Court does not have the authority to vacate the 1988 child support order since to do so would, in essence, annul the accrued arrears, a result clearly forbidden by the Legislature, as interpreted by the Court of Appeals. See Family Court Act § 451. To the extent that Mr. D. raises constitutional issues, which, arguably, might override New York's statutory scheme [see eg Pennsylvania v. Ritchie, 480 US 39 (1987); see also Davis v. Alaska, 415 US 308 (1974); Chambers v. Mississippi, 410 US 284 (1973)], as noted above, his unreasonable delay in raising these issues precludes him from doing so now. See eg Commissioner of Social Services ex rel Rosa Lidia T. v. Luis Alonso G., Jr., 7 AD3d 388 (1st Dept. 2004). Therefore, the respondent's motions must be denied.
[*8]
The respondent's motion to set aside the 1988 judgments of filiation and support is, accordingly, denied.
This constitutes the decision and order of the Court.
Dated: February 18, 2005
 
Salvatore J. Modica
Footnotes

Footnote 1:Pursuant to CPLR 2221, a motion to vacate an order of a judge of coordinate jurisdiction should be referred to the judge who entered the order. Since the judge who presided over the initial proceeding is no longer a sitting judge, this Court is entertaining the respondent's motion. See CPLR 2221.

Footnote 2:It should be noted that there is a presumption of regularity that attaches to Court proceedings. See People v. Velasquez and Foster, 1 NY3d 44 (2003). Mr. D.'s failure to provide or, at least, to make an effort to provide those stenographic minutes to the Court for its examination is critical. This Court could then independently evaluate whether the judge who issued the order of filiation failed to advise Mr. D. of his right to an attorney or whether the lawyer who represented the respondent for the June 2nd appearance, was, in fact, absent for the entry of the paternity and support orders. See Id.

Footnote 3:As a petitioner in a paternity proceeding under Article 5 of the Family Court Act, Mr. D., even if he were indigent in 1988, was not entitled to a court-appointed attorney. See Family Court Act § 262(a)(vii); but see Matter of Clinton L.C. v. Lisa B., 191 Misc 2d 211 (Fam. Ct. Ultster Co. 2002). As a minor, however, Mr. D. was, arguably, entitled to a court-appointed attorney in light of Family Court Act § 241 and the Second Department's decision in Leanna M. See also Family Court Act § 262; see also Matter of John J.S. v. Theresa L., 99 Misc 2d 578 (Fam. Ct. Bronx Co. 1979)(In an Article 5 Paternity proceeding, CPLR § 1201 should be applied in considering the representation of a minor respondent.)